**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| STERETT COMPANIES, LLC., *et al.*,[1] | Case No. 23-40625 (CRM) |
| Debtors. | (Jointly Administered) |

**AMENDED JOINT CHAPTER 11 PLAN PROPOSED**
**BY THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS AND WEBSTER BUSINESS CREDIT, A DIVISION OF**
**WEBSTER BANK, N.A. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**DENTONS BINGHAM**
**GREENEBAUM LLP**
/s/ James R. Irving
James R. Irving
April A. Wimberg
Ashley A. Brown
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
Facsimile: (502) 540-2215
E-mail: james.irving@dentons.com
        april.wimberg@dentons.com
        ashley.brown@dentons.com

*Counsel to the Committee*

**FOWLER BELL PLLC**
/s/ Taft A. McKinstry
Taft A. McKinstry
300 West Vine Street
Lexington, KY 40507
Telephone:  (859) 252-6700
Facsimile:  (859) 255-3735
Email: tmckinstry@fowlerlaw.com

*Local Counsel for Webster Bank*

-and-

**THOMPSON COBURN LLP**
Mark S. Indelicato, Esq. (admitted *pro hac vice*)
Stephen J. Grable, Esq. (admitted *pro hac vice*)
Jacob T. Schwartz, Esq. (admitted *pro hac vice*)
488 Madison Avenue
New York, New York 10022
Telephone:  (212) 478-7200
Facsimile:  (212) 478-7400
Email: mindelicato@thompsoncoburn.com
        jtschwartz@thompsoncoburn.com

*Lead Counsel for Webster Bank*

---

[1]    The Debtors in these Chapter 11 cases are Sterett Companies, LLC (Case No. 23-40625); Sterett Crane and Rigging, LLC (Case No. 23-40626); Sterett Equipment Company, LLC (Case No. 23-40627); and Sterett Heavy Hauling, LLC (Case No. 23-40628).

## TABLE OF CONTENTS

**ARTICLE I.** .................................................................................................................2

    **Section 1.01**    **Definitions** ..........................................................................2

    **Section 1.02**    **Exhibits** ...............................................................................13

    **Section 1.03**    **Rules of Construction** .......................................................14

    **Section 1.04**    **Computation of Time** ........................................................14

**ARTICLE II.** ..............................................................................................................14

    **Section 2.01**    **United States Trustee Fees** ...............................................14

    **Section 2.02**    **Administrative Expenses** ...................................................14

    **Section 2.03**    **Administrative Expense Claim Bar Date** .........................15

    **Section 2.04**    **Priority Tax Claims** ..........................................................15

    **Section 2.05**    **Other Priority Claims** .......................................................15

    **Section 2.06**    **Professional Fee Claims** ...................................................15

    **Section 2.07**    **Lender Advance** .................................................................16

**ARTICLE III.** .............................................................................................................16

    **Section 3.01**    **General Rules** ....................................................................16

    **Section 3.02**    **Classification** ....................................................................17

**ARTICLE IV.** .............................................................................................................17

    **Section 4.01**    **Class 1 – Lender Claim** ....................................................17

    **Section 4.02**    **Class 2 – Other Secured Claims** ......................................18

    **Section 4.03**    **Class 3 – General Unsecured Claims** ...............................18

    **Section 4.04**    **Class 4 – Intercompany Claims** .......................................19

    **Section 4.05**    **Class 5 – Interests** .............................................................20

    **Section 4.06**    **Cramdown and No Unfair Discrimination** .......................20

**ARTICLE V.** ..............................................................................................................20

    **Section 5.01**    **Substantive Consolidation** ................................................20

    **Section 5.02**    **Implementation Actions** ....................................................21

    **Section 5.03**    **CRO** ...................................................................................21

    **Section 5.04**    **Liquidation Trust** .............................................................22

    **Section 5.05**    **Sources of Funding** ...........................................................24

    **Section 5.06**    **Corporate Action; Officers and Directors; Effectuating Documents**........24

    **Section 5.07**    **Records** ..............................................................................25

**ARTICLE VI.** .............................................................................................................25

    **Section 6.01**    **The Sale Process** ...............................................................25

Section 6.02    Lenders as Qualified Bidders ..................................................................26

Section 6.03    Closing Conditions ..................................................................................26

Section 6.04    Sales Free and Clear ...............................................................................26

Section 6.05    Assumption Procedures ..........................................................................27

Section 6.06    Tax Exemptions ......................................................................................28

**ARTICLE VII.** ..............................................................................................................28

Section 7.01    Liquidation Trust Agreement .................................................................28

Section 7.02    Liquidation Trustee ................................................................................29

Section 7.03    Causes of Action .....................................................................................30

**ARTICLE VIII.** .............................................................................................................31

Section 8.01    Conditions to Confirmation ...................................................................31

Section 8.02    Effect of Confirmation ...........................................................................31

Section 8.03    Conditions to Effective Date ..................................................................32

Section 8.04    Effective Date Notice .............................................................................32

Section 8.05    Vesting of Liquidation Trust Assets ......................................................33

Section 8.06    Waiver of Conditions .............................................................................33

Section 8.07    Effect of Nonoccurrence of Conditions .................................................33

**ARTICLE IX.** ................................................................................................................33

Section 9.01    Distributions ...........................................................................................33

Section 9.02    Objections to Claims ..............................................................................34

Section 9.03    No Distribution Pending Allowance .......................................................34

Section 9.04    Undeliverable Distributions ...................................................................34

Section 9.05    Minimum Distributions ..........................................................................34

**ARTICLE X.** .................................................................................................................35

Section 10.01    Exculpation ...........................................................................................35

Section 10.02    Injunction .............................................................................................35

Section 10.03    Binding Effect .......................................................................................36

**ARTICLE XI.** ................................................................................................................36

Section 11.01    Pre-Confirmation Modification ............................................................36

Section 11.02    Withdrawal ...........................................................................................36

Section 11.03    Successors and Assigns .........................................................................36

Section 11.04    Governing Law .....................................................................................36

Section 11.05    Notices ..................................................................................................36

Section 11.06    Retention of Bankruptcy Court Jurisdiction ........................................37

**Section 11.07   Waiver or Estoppel**............................................................................................39

[*Remainder of Page Intentionally Left Blank* ]

## INTRODUCTION

The Official Committee of Unsecured Creditors of Sterett Companies, LLC, *et al.*, (the "Committee") and Webster Business Credit, a division of Webster Bank, N.A., for itself as Lender, and as Agent for certain other Lender parties (the "Lenders" and, together with the Committee, the "Plan Proponents") pursuant to that certain *Credit and Security Agreement* dated October 29, 2020 (as amended, restated, supplemented, or otherwise modified from time to time), hereby propose the following *Amended Joint Chapter 11 Plan* (the "Plan") in connection with the above-captioned cases (the "Chapter 11 Cases") of Sterett Companies LLC ("Sterett") and its affiliated debtors (each a "Debtor" and collectively, the "Debtors") pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Plan Proponents are joint proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Capitalized terms used in this Introduction and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan.

**ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN**.

*[ Remainder of Page Intentionally Left Blank ]*

# ARTICLE I.

## DEFINITIONS & INTERPRETATION

For purposes of the Plan, the following terms have the meanings set forth below, with such meanings to be equally applicable to their singular and plural forms, unless a different meaning is clearly defined herein.  Any term that is used in the Plan and not defined herein, but that is defined in the Bankruptcy Code or in the Bankruptcy Rules, shall have the meaning set forth therein.

**Section 1.01   Definitions**

   **1.**   "***503(b)(9) Claim***" shall mean any Claim against any of the Debtors for the value of goods sold to the Debtors in the ordinary course of business and received by the Debtors within twenty (20) days before the Petition Date.

   **2.**   "***Adequate Protection Payments***" shall mean all payments made to the Lenders during the course of the Chapter 11 Cases in accordance with the Cash Collateral Orders.

   **3.**   "***Administrative Claim Bar Date***" shall mean, except with respect to Professional Fee Claims, the first Business Day that is thirty (30) days after the Effective Date.

   **4.**   "***Administrative Expense***" shall mean any cost or expense of administration of the Case entitled to priority in payment pursuant to sections 327, 328, 364(e)(1), 365, 503(b), 507(a) and (b) or 1114(e)(2) of the Bankruptcy Code, as applicable, including (i) the actual and necessary costs and expenses of preserving the Debtors' Estate; (ii) all allowances of compensation for legal or other services or reimbursement of costs and expenses under applicable sections of the Bankruptcy Code or otherwise allowed by the Bankruptcy Court, (iii) any indebtedness or obligations incurred or assumed by the Debtors during the pendency of these Chapter 11 proceedings, (iv) any fees or charges assessed against and payable by the Estate under 28 U.S.C. §§1911-1930; and (v) any Allowed Claim that is to be treated as an Administrative Claim pursuant to a Final Order of the Bankruptcy Court.

   **5.**   "***Agency Agreement***" shall mean that certain *Agency Agreement* dated August 3, 2024 entered into by and between the Debtors and the Agent governing the Sale Process.

   **6.**   "***Agent***" shall mean, collectively, Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., and IronPlanet, Inc, or such other party as may be designated in replacement thereof pursuant to the Plan and Confirmation Order.

   **7.**   "***Agreed Order***" shall mean the *Agreed Order Authorizing Retention of a Chief Restructuring Officer* [ECF No. 415].

   **8.**   "***Allowed***" or "***Allowed Claim***" shall mean any Claim or Administrative Expense, other than an Insider Claim, that is: (i) listed in the Debtors' Schedules, including any amendments thereto, (a) filed in the Cases as of the Effective Date, (b) not listed as "disputed," "contingent," "unliquidated," or "unknown", and (c) as to which no objection to the allowance thereof has been filed; (ii) set forth in a Proof of Claim timely and properly filed in the Cases on or before the

applicable Bar Date, or filed after the applicable Bar Date with leave of the Bankruptcy Court after notice and opportunity for hearing having been given and as to which no objection to the allowance thereof is filed; (iii) determined to be allowed by Final Order of the Bankruptcy Court; and (iv) specifically identified in the Plan as Allowed or in any contract, instrument or other agreement entered into prior to the Effective Date if approved by the Bankruptcy Court pursuant to a Final Order.

9. "*Assets*" shall mean any and all rights, title, and interest of the Debtors in any assets or property, tangible or intangible, of the Estates, including but not limited to all of the Debtors' equipment, Cash, outstanding accounts receivable, and proceeds thereof.

10. "*Assumption Notice*" shall mean a notice provided to all counterparties to Unexpired Leases and Executory Contracts identifying (i) all Unexpired Leases and Executory Contracts that may be assumed or assumed and assigned as part of the Sales, and (ii) any potential Cure Claims associated with such Unexpired Leases and Executory Contracts

11. "*Avoidance Actions*" shall mean any and all current or potential Causes of Action pursuant to Chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

12. "*Ballot*" shall mean the voting form accompanying the Disclosure Statement Motion distributed to each Holder of an Impaired Claim entitled to vote on the Plan, on which the Holder is to indicate acceptance or rejection of the Plan in accordance with the voting instructions, make any other elections or representations required pursuant to the Plan and procedures governing the solicitation process.

13. "*Bankruptcy Code*" shall mean Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101, *et. seq.*, now in effect or as hereinafter amended.

14. "*Bankruptcy Court*" shall mean the United States Bankruptcy Court for the Western District of Kentucky, Owensboro Division, or such other court of competent jurisdiction as may have jurisdiction over the Chapter 11 Cases.

15. "*Bankruptcy Rules*" shall mean the Federal Rules of Bankruptcy Procedure, as now in effect or hereafter amended.

16. "*Bar Date*" shall mean, as applicable, (i) the General Bar Date, (ii) the Administrative Expense Claim Bar Date, (iii) the Governmental Unit Bar Date, (iv) Professional Fee Claims Bar Date, and (v) any other further date by which Claims must be, or must have been, filed in this Case as established by any Final Order of the Bankruptcy Court, including the Bar Date Order and the Confirmation Order.

17. "*Bar Date Order*" shall mean the *Order (A) Setting Bar Dates for Filing Proofs of Claims and (B) Approving the Form and Manner of Notice Thereof* [ECF No. 163] and any subsequent Final Order of the Bankruptcy Court establishing a deadline for filing Claims in these Chapter 11 Cases.

3

18.  "*Beneficiaries*" shall mean any holder of a Liquidation Trust Interest, whether individually or on behalf of one or more other Persons or Entities. To the extent Holders of Allowed Claims are entitled to a Distribution from the Liquidation Trust pursuant to the terms of the Plan, such Holders are each a "Beneficiary."

19.  "*Business Day*" shall mean any day, other than a Saturday, Sunday or any "legal holiday" as defined in Bankruptcy Rule 9006(a).

20.  "*Cash*" shall mean lawful currency of the United States of America (U.S. dollars) and cash equivalents including regular checks, certified checks, bank checks, wire transfers, and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

21.  "*Cash Collateral Motion*" shall mean the *Debtor's First-Day Motion for Interim and Final Orders Authorizing Use of Cash Collateral* [ECF No. 6].

22.  "*Cash Collateral Orders*" shall mean, collectively, the First Interim Cash Collateral Order, the Second Interim Cash Collateral Order, the Second Interim Cash Collateral Order Extension, the Third Interim Cash Collateral Order, the Fourth Interim Cash Collateral Order, the Fifth Interim Cash Collateral Order, the Sixth Interim Cash Collateral Order, Seventh Interim Cash Collateral Order, and Eighth Interim Cash Collateral Order, each as separately defined herein, and such additional orders approving the continued use of Cash Collateral, as applicable.

23.  "*Causes of Action*" shall mean any and all rights, claims, actions, counter-claims, third-party claims, controversy, demand, right, indemnity, contribution, reimbursement, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license, or any other causes of action relating to the foregoing, known or unknown, contingent or non-contingent, matured or unmatured, liquidated or unliquidated, disputed or undisputed, direct or indirect, whether arising before, on or after the Petition Date, that the Debtor has or may have against any third party as of the Confirmation Date.

24.  "*Causes of Action Allocation*" shall mean the percentage allocation of proceeds of Retained Causes of Action payable as between the Lender Deficiency Claim (if any) and all other Holders of Class 3 General Unsecured Claims, which allocation shall be seventy (70%) percent of proceeds payable to satisfy the Lender Deficiency Claim until such claim is paid in full, and thirty (30%) percent payable to all other Holders of Class 3 General Unsecured Claims.

25.  "*Chapter 11 Cases*" shall have the meaning set forth in the Introduction, including the Chapter 11 Cases of Sterett Companies, LLC (Case No. 23-40625); Sterett Crane and Rigging, LLC (Case No. 23-40626); Sterett Equipment Company, LLC (Case No. 23-40627); and Sterett Heavy Hauling, LLC (Case No. 23-40628), which cases have been jointly administered by the Bankruptcy Court under the caption *In re Sterett Companies, LLC,* et al., Case No. 23-40625 (CRM).

26.  "*Claim*" shall mean a "claim" as defined in Bankruptcy Code section 101(5).

27.  "*Claimant*" shall mean the Holder of any Claim.

4

**28.** "***Claims Objection Bar Date***" shall mean, except as otherwise set forth in the Plan or Confirmation Order, (a) the first business day that is one hundred eighty (180) days after the Effective Date, or (b) such later time as may be specifically fixed by a Final Order of the Bankruptcy Court.

**29.** "***Class***" shall mean any category of Claims or Interests as specified in Article III.

**30.** "***Closing Date***" shall mean any date that a Sale is consummated.

**31.** "***Committee***" shall mean the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102(b) on December 5, 2023 [ECF No. 66].

**32.** "***Confirmation***" shall mean entry of the Confirmation Order by the Bankruptcy Court.

**33.** "***Confirmation Date***" shall mean the date on which the Bankruptcy Court enters the Confirmation Order on the docket within the meaning of Bankruptcy Rules 5003 and 9021.

**34.** "***Confirmation Hearing***" shall mean a hearing to be held by the Bankruptcy Court in connection with confirmation of the Plan, as such hearing may be adjourned or continued.

**35.** "***Confirmation Order***" shall mean an order of the Bankruptcy Court confirming the Plan in accordance with section 1129 of the Bankruptcy Code in a form and substance acceptable to the Plan Proponents.

**36.** "***CRO***" shall mean Mr. Darren Gibbons of TODA Investments, LLC, appointed pursuant to the CRO Retention Order, or such other Chief Restructuring Officer as may be appointed in replacement of Mr. Gibbons.

**37.** "***CRO Retention Order***" shall mean the *Order Approving Debtors' Application Pursuant to Sections 105(A) and 363(B) to Employ and Retain TODA Investments, LLC and Designate Darren Gibbons as Chief Restructuring Officer* [ECF No. 432].

**38.** "***Cure Claim***" shall mean any monetary amounts required to cure any of the Debtors' default(s) under any Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is to be assumed pursuant to Bankruptcy Code sections 365 or 1123.

**39.** "***Cure Claim Reserve***" shall mean the reserve established and maintained by the Liquidation Trustee for payment of Disputed Cure Claims, which reserve shall be established in an amount equal to the face value of all Disputed Cure Claims or such other amount as may be ordered by the Bankruptcy Court.

**40.** "***Debtor(s)***" shall have the meaning set forth in the Introduction.

**41.** "***Disallowed***" shall mean, with respect any Claim against the Debtors, a Claim that (i) has been disallowed under the Plan by a Final Order of the Bankruptcy Court or pursuant to a settlement, or (ii) is Scheduled at zero dollars, or (iii) identified as contingent, disputed, or unliquidated on the Debtors' Schedules and to which an applicable Bar Date has been established but no Proof of Claim has been timey filed or deemed timely filed by the Bankruptcy Court.

42. "*Disclosure Statement*" shall mean the *Disclosure Statement for Amended Joint Chapter 11 Plan Proposed by the Official Committee of Unsecured Creditors and Webster Business Credit, a Division of Webster Bank, N.A. Under Chapter 11 of the Bankruptcy Code,* as may be amended, supplemented, or modified from time to time, as prepared by the Plan Proponents and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, the Disclosure Statement Order, and any other applicable law.

43. "*Disclosure Statement Motion*" shall mean the *Plan Proponents' Motion for an Order (I) Approving Disclosure Statement, (II) Establishing Plan Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of Amended Joint Chapter 11 Plan*, filed contemporaneously with the Plan.

44. "*Disclosure Statement Order*" shall mean the order of the Bankruptcy Court approving the Disclosure Statement.

45. "*Disclosure Statement Supplement*" shall mean such additional supplemental disclosure documents filed by the Plan Proponents and incorporated into the Disclosure Statement.

46. "*Disputed Claim*" shall mean any Claim (i) as to which an objection has been timely filed as of the Effective Date or any later deadline fixed by the Plan or the Bankruptcy Court, and (ii) which objection has not been withdrawn and is not the subject of a Final Order Allowing or Disallowing such Claim.

47. "*Distribution*" shall mean the payment or transfer of funds (including Sale Proceeds) by or through the Liquidation Trustee to Holders of Allowed Claims pursuant to the Plan and Liquidation Trust Agreement.

48. "*Effective Date*" shall mean the date upon which each of the conditions set forth in Article IX of the Plan have been either satisfied or waived, or such other later date as may be designated by the Plan Proponents.

49. "*Effective Date Notice*" shall mean the notice that the Effective Date has occurred.

50. "*Eighth Interim Cash Collateral Order*" shall mean the *Eighth Interim Order Authorizing Use of Cash Collateral* [ECF No. 477].

51. "*Entity*" shall mean any "entity" as defined in in Bankruptcy Code section 101(15).

52. "*Estate(s)*" shall mean each of the Debtors' estates created pursuant to Bankruptcy Code section 541.

53. "*Exculpated Parties*" shall mean the (i) Lenders, (ii) CRO, (iii) Liquidation Trustee (iv) Agent, (v) Committee, including each member of the Committee in its capacity as a Committee member, and (vi) each of their current or former agents, representatives, attorneys, accountants, financial advisors, other professionals or employees, officers or directors.

**54.** "*Executory Contract*" shall mean any contract to which the Debtors are a party and which is capable of being assumed or rejected pursuant to Bankruptcy Code section 365, including any modifications, amendments, addenda or supplements thereto or restatements thereof.

**55.** "*Fifth Interim Cash Collateral Order*" shall mean the *Fifth Interim Order Authorizing Use of Cash Collateral* [ECF No. 281] as extended by the *Agreed Order Extending Fifth Interim Cash Collateral Order Through and Including June 14, 2024* [ECF No. 367].

**56.** "*First Interim Cash Collateral Order*" shall mean the *Interim Order Authorizing Use of Cash Collateral* [ECF No. 16].

**57.** "*Final Fee Applications*" shall mean all fee applications filed by Professionals seeking final allowance of Professional Fee Claims incurred up to and including the Effective Date; *provided, however*, that no fee application shall be filed by any Professional relating to any Professional Fee Claim arising after the Effective Date; and *provided, further*, that Professionals may include in such Final Fee Applications any estimated amounts for fees and expenses incurred after the Effective Date in connection with the preparation, Filing and prosecution (but not defense of) such Final Fee Applications and for attending the Final Fee Hearing.

**58.** "*Final Fee Hearing*" shall mean hearing before the Bankruptcy Court to consider Final Fee Applications.

**59.** "*Final Order*" shall mean an order or judgment of the Bankruptcy Court or another court of competent jurisdiction in connection with the Case, which order or judgment has not been reversed, stayed, modified, amended or vacated, and (i) the time to appeal from, or to seek review or rehearing of, has expired, (ii) no appeal, review, certiorari or rehearing is pending, and (iii) the order has become conclusive as to all matters adjudicated therefor and is in full force and effect.

**60.** "*Fourth Interim Cash Collateral Order*" shall mean the *Fourth Interim Order Authorizing Use of Cash Collateral* [ECF No. 237].

**61.** "*General Bar Date*" shall mean March 15, 2024, as set forth in the Bar Date Order.

**62.** "*Governmental Unit*" shall mean as set forth in Bankruptcy Code section 101(27).

**63.** "*Governmental Unit Bar Date*" shall mean April 25, 2024, as set forth in the Bar Date Order.

**64.** "*General Unsecured Claim*" shall mean any Claim against the Debtors that is not (a) an Administrative Expense, (b) a Professional Fee Claim, (c) a Priority Tax Claim, (d) an Other Priority Claim, (e) a Secured Claim, (f) an Other Secured Claim, or (g) any Claim that constitutes an Interest.  For the avoidance of doubt, the Lender Deficiency Claim, if any, shall be an Allowed General Unsecured Claim.

**65.** "*Holder*" shall mean the beneficial holder of any Claim or Interest.

**66.** "*Impaired*" shall mean, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

**67.** "***Insider***" shall have the meaning set forth in Bankruptcy Code section 101(31), including, but not limited to, William L. Sterett III, Nolan Thomas, Kim Kingsley, Clayton Kingsley, Kristi Isenbarger, Katherine Sterett, William Louis Sterett IV, Maxwell Braden Sterett, the Non-Debtor Affiliates, and any other direct or indirect affiliates of the Debtors.

**68.** "***IRC***" shall mean the Internal Revenue Code of 1986, as amended.

**69.** "***Insider Claim***" shall mean any Claim owed to or held by an Insider; *provided, however*, that Intercompany Claims shall not be deemed to be Insider Claims for purposes of the Plan.

**70.** "***Intercompany Claims***" shall mean any Claim against a Debtor held by another Debtor.

**71.** "***Interest***" shall mean any ownership interest in the Debtor.

**72.** "***Lenders***" shall mean Webster Business Credit, a division of Webster Bank, N.A., Rockland Trust Company, and Huntington National Bank.

**73.** "***Lender Advance***" shall mean an advance (if any) made by the Lenders as necessary to satisfy any Administrative Claims, Priority Claims, 503(b)(9) Claims, and other Plan Expenses, including the Liquidation Trust Funding. For the avoidance of doubt, the Lender Advance (i) may, in the Lenders' discretion, be provided using Sale Proceeds, (ii) shall only be paid to the extent there is insufficient Cash to satisfy such Claims and expenses, and (iii) to the extent provided, shall be repaid to the Lenders in full from the first proceeds of the Sales, and shall be paid in addition to the Lender Claim.

**74.** "***Lender Claim***" shall mean the Claim against each of the Debtors held by the Lenders, in the amount no less than $66,991,968.81 as of the Petition Date, arising under the Prepetition Credit Agreement, as such may be increased by the amount of the Lender Advance and any other costs incurred by the Lenders in connection with Confirmation. The Lender Claim shall be deemed (a) Allowed as against each of the Debtors in an amount no less than $66,991,968.81, plus (i) all accrued and unpaid interest, including post-petition and post-Confirmation interest, (ii) all other costs and expenses of Lenders, including post-petition legal fees, incurred by Lenders after the Petition Date, and (iii) the Lender Advance, and (b) secured by a legal, valid, binding, enforceable, and properly perfected Lien, not subject to avoidance, challenge, claim, counterclaim, defense, disallowance, disgorgement, objection, offset, recharacterization, recoupment, or subordination, whether under Chapter 5 of the Bankruptcy Code or otherwise, on any and all contractual, legal, equitable, or other grounds, and without limitation of the foregoing, granted to, or for the benefit of, the Lenders for fair consideration and reasonably equivalent value. For the avoidance of doubt, the Lender Contribution shall not increase the amount of the Lender Claim.

**75.** "***Lender Contribution***" shall mean a contribution of Sale Proceeds by the Lenders to Holders of Allowed Class 3 General Unsecured Claims (excluding Insider Claims and the Lender Deficiency Claim, if any) in the amount of five hundred thousand ($500,000) dollars.

**76.** "***Lender Deficiency Claim***" shall mean, to the extent the disposition of the Lenders' collateral is insufficient to satisfy the Lender Claim in full, any balance of such Lender Claim, which shall be an Allowed Class 3 General Unsecured Claim and receive treatment as such in accordance with the Plan.

**77.** "*Lien*" shall have the meaning set forth Bankruptcy Code section 101(37).

**78.** "*Liquidation Trust*" shall mean a trust to be established on or before the Effective Date in accordance with the provisions of this Plan and the Liquidation Trust Agreement to hold all legal and equitable title to the Liquidation Trust Assets and administer such assets in accordance with the terms of the Plan and the Liquidation Trust Agreement.

**79.** "*Liquidation Trustee*" shall mean Jacen A. Dinoff of KCP Advisory Group, LLC, or such other party as may be designated by the Plan Proponents on or before Confirmation, to serve as the trustee of the Liquidation Trust and as the fiduciary responsible for administering the Liquidation Trust, and any successor subsequently appointed pursuant to the Liquidation Trust Agreement. The terms setting forth the retention and compensation of the Liquidation Trustee shall be disclosed in a Plan Supplement.

**80.** "*Liquidation Trust Agreement*" shall mean the agreement, in form and substance acceptable to the Plan Proponents, evidencing the terms and provisions governing the Liquidation Trust, which shall be entered into prior to the establishment of the Liquidation Trust, and shall govern the management and administration of the Liquidation Trust Assets. The Liquidation Trust Agreement shall be provided as part of a Plan Supplement.

**81.** "*Liquidation Trust Assets*" shall mean all of the Debtors' property and Assets, including but not limited to (i) M&E Assets, (ii) Sale Proceeds, (iii) Retained Causes of Action, (iv) Cash, (v) accounts receivable, and (vi) all proceeds thereof.

**82.** "*Liquidation Trust Expenses*" shall mean all actual and necessary fees, costs, expenses and obligations incurred by or owed to the Liquidation Trustee and his or her agents, employees, attorneys, advisors and other professionals in administering this Plan and the Liquidation Trust, including, without limitation, (i) reasonable compensation for services rendered, and reimbursement for actual and necessary expenses incurred by the Liquidation Trustee and his or her agents, employees and professionals after Confirmation through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Cases, and (ii) all fees payable pursuant to Article VII of the Plan.

**83.** "*Liquidation Trust Funding*" shall mean Cash in the amount of on hundred thousand ($100,000) dollars to be funded from the Lender Advance on the Effective Date and utilized in accordance with the Plan and Liquidation Trust Agreement to satisfy Liquidation Trust Expenses.

**84.** "*Liquidation Trust Interests*" shall mean the non-transferable interests in the Liquidation Trust issued to each Beneficiary of the Liquidation Trust pursuant to the terms, conditions, and priorities set forth in the Plan and the Liquidation Trust Agreement entitling each Beneficiary to *pro rata* Distributions from the Liquidation Trust.

**85.** "*M&E Assets*" shall have the meaning set forth in the Agency Agreement, including the Debtors' machinery and equipment and such other Assets as may be designated by the Agent or the Liquidation Trustee as M&E Assets, and which shall be deemed to be transferred to the Liquidation Trust as of the Effective Date.

**86.** "*Mr. Sterett*" shall mean William L. Sterett III.

**87.**  "*Non-Debtor Affiliates*" shall mean all Entities that constitute Affiliates of the Debtors, including those Entities sharing common ownership by Mr. Sterett, including but not limited to (i) W4 Investments LLC; (ii) Hook4Hire LLC; (iii) Issac Sterett Adventure Foundation Company; (iv) SCG Leasing LLC; (v) Sterett Transportation LLC; (vi) HWH Transport LLC; (vii) Marine Dock Supply LLC; (viii) LTM11200 LLC; (ix) Ascend Equipment LLC; (x) Tri-State Rigging; (xi) Sterett Construction Company; (xii) Green Space Adventures LLC; (xiii) JetOne LLC; (xiv) C2 Safety; and (xv) HWH Transport, LLC.

**88.**  "*Other Priority Claim*" shall mean any Claim against the Debtors entitled to priority status in accordance with section 507(a) of the Bankruptcy Code, other than an Administrative Expense or Priority Tax Claim.

**89.**  "*Other Secured Claim*" any claim other than the Lender Claim that is secured by a valid Lien, security interest, or other interest in property in which the Debtors have an interest, that has been properly perfected as required by applicable law and is not otherwise avoidable by the Debtors as debtors-in-possession or any other Person, but only to the extent of the value of the Debtors' interest in such property determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

**90.**  "*Person*" shall mean any individual, firm, corporation, partnership, limited liability company, business trust, joint stock company, trust, estate, unincorporated association, Governmental Unit, joint venture or other entity of whatever nature.

**91.**  "*Petition Date*" shall mean October 27, 2023.

**92.**  "*Plan*" shall have the meaning set forth in the Introduction, including all Exhibits attached hereto or referenced herein, and any Plan Supplements, as the same may be amended, modified or supplemented.

**93.**  "*Plan Expenses*" shall mean the (i) Liquidation Trust Expenses (including the Liquidation Trust Funding), (ii) costs and expenses incurred in connection with operating the Post-Confirmation Debtors' business, and (iii) costs and expenses required to be paid in connection with the Sale Process, including without limitation (A) the commissions, fees, and expenses of the Agent, and (B) recording fees, transfer and stamp taxes to the extent that the Sales are not exempt therefrom pursuant to section 1146(c) of the Bankruptcy Code, closing adjustments, title costs and other similar, customary and necessary expenses, costs or credits.

**94.**  "*Plan Proponents*" shall mean the Committee and Lenders, as defined in the Introduction and within the meaning of section 1129 of the Bankruptcy Code.

**95.**  "*Plan Supplement(s)*" shall mean one or more supplemental appendixes to the Plan, which shall (i) be filed with the Bankruptcy Court not later than seven (7) calendar days prior to the date by which all objections to Confirmation of the Plan must be filed with the Bankruptcy Court; (ii) be served upon the all parties-in-interest in these Chapter 11 Cases; and (iii) may contain the Liquidation Trust Agreement and any other documentation necessary to effectuate the Plan or that is contemplated by the Plan.  The contents of each Plan Supplement shall be deemed

incorporated into the Plan by reference and shall be a part of the Plan. The Plan Proponents shall be entitled to amend the contents of any Plan Supplement through and until the Effective Date.

96. "*Post-Confirmation Lien*" shall mean any Lien asserted against the Assets arising from and after the Confirmation Date.

97. "*Post-Confirmation Debtors*" shall mean, following the Confirmation of the Plan, the Debtors and their Estates, which shall remain in existence and under the control of the Liquidation Trustee for such period as may be required by the Liquidation Trustee.

98. "*Prepetition Credit Agreement*" shall mean that certain *Credit and Security Agreement* dated October 29, 2020, pursuant to which the Lenders provided the Debtors with a pre-petition senior secured revolving credit facility in the aggregate principal amount of $70 million, as amended, modified, restated, or supplemented from time to time.

99. "*Prepetition Credit Facility*" shall mean the asset-based revolving credit facility provided under the Prepetition Credit Agreement.

100. "*Prepetition Loan Documents*" shall mean the Prepetition Credit Agreement and together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Lenders, including, without limitation, all security agreements, deposit account control agreements (including, without limitation, control agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto).

101. "*Priority Tax Claim*" shall mean any Claim of a Governmental Unit entitled to priority under section 507(a)(8) of the Bankruptcy Code.

102. "*Professional(s)*" shall mean Persons employed by the Debtors and the Committee in these Chapter 11 Cases pursuant to a Final Order of the Bankruptcy Court under Bankruptcy Code sections 327, 328, or 1103.

103. "*Professional Fees*" shall mean all fees, costs and expenses of Professionals incurred during the administration of the Cases up to and including the Effective Date, which fees, costs, and expenses shall have been awarded by Final Order pursuant to sections 330 or 503(b) of the Bankruptcy Code.

104. "*Professional Fee Claim*" shall mean a Claim for any and all fees and expenses of Professionals to the extent Allowed pursuant to sections 327, 328, 330, 331, 363 or 503(b) of the Bankruptcy Code.

105. "*Professional Fee Claim Bar Date*" shall mean the first Business Day that is sixty (60) days after the Effective Date.

106. "*Proof of Claim*" shall mean a proof of claim against the Debtors filed in accordance with section 501 of the Bankruptcy Code and the Bar Date Order.

**107.** "*Pro Rata*" shall mean the proportion that the Allowed Claim in a particular Class or Classes, as appropriate, bears to the aggregate amount of all Claims (including Disputed Claims until allowed or disallowed) in such Class.

**108.** "*Retained Causes of Action*" shall mean Causes of Action retained by the Post-Confirmation Debtors and their Estates, which Causes of Action shall thereafter be transferred to the Liquidation Trust to be pursued by the Liquidation Trustee; *provided, however*, that Claims and Causes of Action, if any, that may be asserted against the Plan Proponents shall not be Retained Causes of Action.  Retained Causes of Action shall be disclosed in the Disclosure Statement and/or a Plan Supplement prior to Confirmation.

**109.** "*Rejection Damages Claim*" shall mean any Claim arising from the rejection, under Bankruptcy Code section 365 or the Plan, of an Executory Contract or Unexpired Lease and determined in accordance with Bankruptcy Code section 502(g).

**110.** "*Rejection Damages Claim Bar Date*" shall mean as set forth in Section 8.05.

**111.** "*Sale(s)*" shall mean any sale or other disposition of any Assets, including but not limited to the sale of any M&E Assets pursuant to the Sale Order and Agency Agreement.

**112.** "*Sale Order*" shall mean the *Order (I) Authorizing the Debtors to Enter Into Agency Agreement, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (III) Granting Related Relief* [ECF No. 457].

**113.** "*Sale Proceeds*" shall mean the proceeds of any Sales, net of costs and expenses, which shall be distributed to the Lenders in accordance with the Plan and Sale Order until the Lender Claim is repaid in full, and thereafter to Holders of Class 3 General Unsecured Claims.

**114.** "*Scheduled*" shall mean, with respect to any Claim against the Debtors, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

**115.** "*Schedules*" shall mean the Schedules of Assets and Liabilities and Statements of Financial Affairs filed by the Debtors in each of their respective Chapter 11 Cases pursuant to Bankruptcy Code section 521 on December 1, 2023, [ECF No. 59 in Case No. 23-40635; ECF No. 40 in Case No. 23-40626; ECF No. 40 in Case No. 23-40627; ECF No. 40 in Case No. 23-40628], as amended on February 13, 2024 [ECF No. 47-48 in Case No. 23-40626, ECF No. 47 in Case No. 23-40627, ECF No. 47 in Case No. 23-40628], and as may be further amended from time to time.

**116.** "*Second Interim Cash Collateral Order*" shall mean the *Second Interim Order Authorizing Use of Cash Collateral* [ECF No. 56] and Second Interim Cash Collateral Order Extension.

**117.** "*Second Interim Cash Collateral Order Extension*" shall mean the *Agreed Order Extending Second Interim Cash Collateral Order Through and Including January 26, 2024* [ECF No. 131].

**118.** "*Settlement*" shall mean that certain *Revised Settlement Term Sheet* dated June 12, 2024 by and between the Debtors, Mr. Sterett, the Lenders, and the Committee and as approved pursuant to the Agreed Order.

**119.** "*Seventh Interim Cash Collateral Order*" shall mean the *Seventh Interim Order Authorizing Use of Cash Collateral* [ECF No. 440].

**120.** "*Sixth Interim Cash Collateral Order*" shall mean the *Sixth Interim Order Authorizing Use of Cash Collateral* [ECF No 416].

**121.** "*Third Interim Cash Collateral Order*" shall mean the *Third Interim Order Authorizing Use of Cash Collateral* [ECF No. 165].

**122.** "*Unclaimed Distribution*" shall mean any distribution of Cash or any other property made to the Holder of an Allowed Claim pursuant to this Plan that (a) is returned to the Liquidation Trustee as undeliverable and no appropriate forwarding address is received within the later of (i) ninety (90) days after the Effective Date and (ii) ninety (90) days after such attempted Distribution by the Liquidation Trustee is made to such Holder or (b) in the case of a distribution made in the form of a check, is not negotiated within ninety (90) days and no request for re-issuance is made. Upon a distribution to the Holder of an Allowed Claim becoming an Unclaimed Distribution, such Allowed Claim shall automatically become null and void and shall be expunged.

**123.** "*Unexpired Lease*" shall mean any lease of nonresidential real property to which any of the Debtors is a party which is subject to assumption or rejection pursuant to Bankruptcy Code sections 365 and 1123

**124.** "*United States Trustee*" shall mean the United States Trustee for the Western District of Kentucky, Owensboro Division.

**125.** "*U.S. Trustee Fees*" shall mean all fees and charges assessed against the Estates under Section 1930 of title 28 of the United States Code.

**126.** "*W4*" shall mean W4 Investments LLC.

**127.** "*W4 Leases*" shall mean any leases by and between the Debtors and W4 with respect to the W4 Properties.

**128.** "*W4 Properties*" shall mean all commercial real property owned and/or leased by W4 and leased and/or subleased to the Debtors as of the Petition Date.

## Section 1.02   Exhibits

All Exhibits and appendices to the Plan and all Plan Supplements are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein.

### Section 1.03    Rules of Construction

The rules of construction set forth in section 102 of the Bankruptcy Code shall be applicable to all of the provisions of the Plan. Without in any way limiting the foregoing, for purposes of the Plan, unless otherwise provided herein: (a) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan, Confirmation Order or otherwise; (c) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors, assigns and affiliates; (d) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (e) unless otherwise specified, all references to "Article" or "Section" are references to Articles or Sections of the Plan, (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) subject to the provisions of any contracts, articles or certificates of incorporation, bylaws, codes of regulation, similar constituent documents, instruments, releases or other agreements or documents entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules.

In the event of a conflict between the Plan and the Disclosure Statement, the contents of the Plan shall control. The provisions and conditions set forth in the Confirmation Order shall control over both the Plan and Disclosure Statement to the extent such terms conflict.

### Section 1.04    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 shall apply.

**ARTICLE II.**

**<u>TREATMENT OF UNCLASSIFIED CLAIMS</u>**

### Section 2.01    United States Trustee Fees

All accrued U.S. Trustee Fees shall be paid in full in Cash on the Effective Date, or as soon thereafter as reasonably practicable, in accordance with Section 2.07. All U.S. Trustee Fees accruing post-Confirmation shall be payable by the Post-Confirmation Debtors or Liquidation Trustee, as applicable, when such amounts become due and owing.

### Section 2.02    Administrative Expenses

Each Holder of an Allowed Administrative Expense Claim shall be paid in full in Cash on the later of: (i) the Effective Date, or as soon thereafter as reasonably practicable; (ii) within five (5) Business Days after the date such Administrative Expense Claim becomes an Allowed Claim; (iii)

on such other date as agreed upon by the Plan Proponents and the Holder of such Administrative Expense Claim; or (iv) on such other date as may be ordered by the Bankruptcy Court.

Notwithstanding the foregoing, Administrative Expenses arising in the ordinary course of the Debtors' or Post-Confirmation Debtors' business prior to the Effective Date shall be paid by the (i) CRO or Liquidation Trustee on behalf of the Post-Confirmation Debtors, or (ii) Liquidation Trust, as appropriate. Allowed Administrative Claims shall be satisfied in accordance with this Section and Section 2.07.

### Section 2.03    Administrative Expense Claim Bar Date

All requests for payment of Administrative Expense Claims (excluding U.S. Trustee Fees, Professional Fee Claims, and Administrative Expense Claims arising in the ordinary course of the Debtors' and Post-Confirmation Debtors' business prior to the Effective Date) must be filed and served on or before the Administrative Expense Claim Bar Date.

Holders of such Administrative Expense Claims who do not timely file such a request for payment shall be forever barred from asserting such Administrative Expense Claims against the Debtors, the Estates, the Post-Confirmation Debtors, the Liquidation Trust, or the Plan Proponents, and the Holders thereof shall be permanently barred and enjoined from commencing or continuing any Cause of Action, employment of process, or act to collect, offset or recover such Administrative Expense Claim.

### Section 2.04    Priority Tax Claims

On the Effective Date, or as soon thereafter as reasonably practicable, each Holder of an Allowed Priority Tax Claim shall be paid in accordance with Section 2.07 an amount equal to the Allowed amount of such Priority Tax Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim.

### Section 2.05    Other Priority Claims

Except to the extent that a Holder of an Allowed Other Priority Claim has agreed to a less favorable treatment, and only to the extent that any such Allowed Other Priority Claim has not been paid in full prior to the Effective Date, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in accordance with Section 2.07 in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date such Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtors or the Liquidation Trustee, as the case may be, and the Holder of the Allowed Other Priority Claim.

### Section 2.06    Professional Fee Claims

### 1.    Professional Fee Claims Bar Date

All Professionals requesting compensation or reimbursement of Professional Fee Claims for services rendered before or on the Effective Date shall file a Final Fee Application for allowance

of compensation and reimbursement of expenses no later than the Professional Fee Claims Bar Date.

The Final Fee Hearing shall be held as soon as practicable after the Professional Fee Claims Bar Date, which shall be set forth on the Effective Date Notice or such other notice as is reasonably necessary or required by the Bankruptcy Code or Bankruptcy Rules.  Such notice shall be served upon counsel for the Committee, all Professionals, the U.S. Trustee, and all other parties in interest as required pursuant to Bankruptcy Rule 2002.

**2.  Treatment of Professional Fee Claims**

Allowed Professional Fee Claims shall be paid in accordance with Section 2.07 in such amounts as are Allowed by the Bankruptcy Court as soon as reasonably practicable upon the later of (i) the Effective Date, and (ii) the date upon which the order relating to any such Allowed Professional Fee Claims is entered by the Bankruptcy Court.

**Section 2.07  Lender Advance**

All Allowed Administrative Claims, U.S. Trustee Fees, Priority Tax Claims (if any), Other Priority Claims (if any), and the Liquidation Trust Funding shall be paid first from Cash of the Debtors and Post-Confirmation Debtors on hand as of the Effective Date, and thereafter, to the extent Cash is insufficient, from the Lender Advance.

On the Effective Date or as soon thereafter as reasonably practicable thereafter, and only to the extent Cash is insufficient, the Lenders shall provide the Lender Advance to the Liquidation Trustee in such amount as is necessary to cause (i) U.S. Trustee Fees, (ii) Administrative Expenses, (iii) Professional Fee Claims, (iv) Priority Tax Claims, (v) Other Priority Claims, and (vi) the Liquidation Trust Funding to be fully satisfied or reserved for.

Any Lender Advance made in accordance with this Section (i) may be provided using Sale Proceeds as determined by the Lenders in their discretion, (ii) shall be included within and added to the Lender Claim and shall be secured by all collateral of the Lenders securing the Lender Claim, (iii) increase the Lender Claim on a dollar-for-dollar basis, and (iv) be deemed Allowed as a Class 1 Claim and receive treatment in accordance with the Plan.

**ARTICLE III.**

**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**Section 3.01  General Rules**

Claims and Interests, except as otherwise provided in Article II, are classified in the Classes set forth in this Article III.

Any Holder of a Claim who fails to object in writing by no later than twenty (20) days prior to the Confirmation Hearing to the classification provided in the Plan, and who has not filed such objection with the Bankruptcy Court and served such objection upon counsel for the Debtors, Plan

Proponents, the United States Trustee, and all other parties entitled to receive notice in these Chapter 11 Cases, shall be deemed to have accepted such classification and shall be bound thereby.

**Section 3.02   Classification**

The classification of Claims and Interests against the Debtors are as set forth below.  For purposes of this Plan and as a result of substantive consolidation of each of the Debtors and their Estates, Claims and Interests held against each of the Debtors shall be deemed to be asserted as against all of the Debtors, and each Claim filed or to be filed against more than one Debtor shall be deemed filed only against one consolidated Debtor and shall be deemed a single Claim against and a single obligation of the Debtors.  The classification of Claims and Interests set forth herein shall apply jointly to each of the Debtors:

| Class | Claims & Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Lender Claim | Impaired | Deemed to Accept |
| Class 2 | Other Secured Claims | Impaired | Entitled to Vote |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Intercompany Claims | Impaired | Deemed to Reject |
| Class 5 | Interests | Impaired | Deemed to Reject |

## ARTICLE IV.

## TREATMENT OF CLAIMS AND INTERESTS

Each Claimant or Interest Holder, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Plan Proponents, the Liquidation Trustee, and the Holder of such Allowed Claim or Interest, as applicable.

**Section 4.01   Class 1 – Lender Claim**

*Classification*:    Class 1 shall consist of that portion of the Lender Claim that constitutes a Secured Claim.

*Treatment*:    In full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claims and all Liens securing such Claims, the Holders of Class 1 Claims shall receive (a)(i) on the Effective Date, the application of all Adequate Protection Payments to post-petition interest, costs, fees, and other expenses incurred during these Chapter 11 Cases in connection with the Cash Collateral Orders, and (ii) on the Effective Date and continuing

17

thereafter as part of the Sale Process, all Sale Proceeds (subject only to the Lender Contribution) in accordance with the Agency Agreement and Sale Order until the Lenders receive, in the aggregate, up to the full amount of the Lender Claim, and (b) net proceeds of any Retained Causes of Action, subject to the Causes of Action Allocation.

*Voting*:              Class 1 is Impaired. As proponents of the Plan, Lenders are conclusively presumed to accept the Plan.

## Section 4.02   Class 2 – Other Secured Claims

*Classification*:      Class 2 shall consist of all Allowed Other Secured Claims that constitute a Secured Claim, including but not limited to claims of Auxilior Capital Partners d/b/a Magni Finance and Heritage Federal Credit Union to the extent such Claims are secured Claims.  The Plan Proponents and/or Liquidation Trustee reserve all rights to seek reclassification such Claims in the event that the Plan Proponents and/or Liquidation Trustee determine that such Claims are not Other Secured Claims.

*Treatment*:           Except to the extent previously paid during the Chapter 11 Cases or the Claimant agrees to less favorable treatment, on the later of (a) the Effective Date, (b) such date as is reasonably practicable after such Other Secured Claim becomes an Allowed Claim, Holder of an Allowed Other Secured Claim shall receive either, at the election of the Liquidation Trustee as necessary, (i) Cash in an amount equal to the Allowed amount of such Claim; (ii) to the extent such Other Secured Claim is secured by M&E Assets sold to a purchaser as part of the Sale Process, attachment of such Allowed Other Secured Claim to the Sale Proceeds generated from such M&E Assets; (iii) redemption of the applicable collateral securing any such Claim up to the secured amount of such Claim pursuant to section 506(a) of the Bankruptcy Code; or (iv) such other treatment as agreed by and between the Claimant and Plan Proponents .

*Voting*:              Class 2 is Impaired and the Holders of the Class 2 Claim are entitled to vote to accept or reject the Plan.

## Section 4.03   Class 3 – General Unsecured Claims

*Classification*:      Class 3 consists of all Allowed General Unsecured Claims, including any Allowed deficiency claims of Holders of Other Secured Claims and the Lender Deficiency Claim (if any).

*Treatment*:           On such date as is reasonably practicable after the occurrence of the Effective Date, Holders of Allowed General Unsecured Claims shall

receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claims, Liquidation Trust Interests entitling such Claimants to receive a Distribution equal to their Pro Rata share of:

(a) for General Unsecured Claims other than the Lender Deficiency Claim and Insider Claims, (i) the Lender Contribution; (ii) Sale Proceeds remaining after satisfaction of or reserve for Plan Expenses, the Class 1 Claims, Class 2 Claims, and any Post-Confirmation Liens, and (iii) subject to the Causes of Action Allocation, proceeds of Retained Causes of Action; *provided, however* that the Liquidation Trustee shall be permitted to retain the Lender Contribution until all General Unsecured Claims have been reviewed and Allowed or Disallowed, as applicable;

(b) for General Unsecured Claims constituting Insider Claims, Sale Proceeds remaining after payment of or reserve for Plan Expenses, the Class 1 Claims, Class 2 Claims, and any Post-Confirmation Liens.  For the avoidance of doubt, the Lender Contribution shall not be used to satisfy any portion of Insider Claims; and

(c) for the Lender Deficiency Claim (if any), subject to the Causes of Action Allocation, proceeds of Retained Causes of Action. For the avoidance of doubt, the Lender Contribution shall not be used to satisfy any portion of the Lender Deficiency Claim.

In no event shall the aggregate amount of such Distributions to any Holder of an Allowed General Unsecured Claim exceed the Allowed Amount of such Claim.

| | |
|---|---|
| *Voting*: | Class 3 is Impaired and entitled to vote to accept or reject the Plan. |

## Section 4.04    Class 4 – Intercompany Claims

| | |
|---|---|
| *Classification*: | Class 4 consists of all Intercompany Claims. |
| *Treatment*: | On the Effective Date, as a result of substantive consolidation of the Debtors' Estates and Chapter 11 Cases, all Intercompany Claim will be deemed canceled and released and the Holders of Intercompany Claims shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Claims. |
| *Voting*: | Class 4 is Impaired and deemed to reject the Plan. |

**Section 4.05   Class 5 – Interests**

| | |
|---|---|
| *Classification*: | Class 5 consists of all Allowed Interests. |
| *Treatment*: | Holders of Equity Interests will neither receive any Distribution nor retain any property under the Plan.  All equity interest/shares of stock in the Debtors shall be deemed canceled upon the Effective Date. |
| *Voting*: | Class 5 is Impaired and deemed to reject the Plan. |

**Section 4.06   Cramdown and No Unfair Discrimination**

To the extent any Impaired Class does not accept the Plan, the Plan Proponents shall seek Confirmation pursuant to Bankruptcy Code section 1129(b) (colloquially known as a "cramdown"), which allows the Bankruptcy Court to confirm a plan accepted by at least one impaired class so long as it does not unfairly discriminate and is fair and equitable with respect to each class of claims and interest that is impaired and has not accepted the plan.  The Plan Proponents submit that the treatment of Claims and Interests described in the Plan is fair and equitable and does not discriminate unfairly.  The proposed treatment of Claims and Interests provides that each Holder of such Claim or Interest will be treated identically within its respective Class and that, except when agreed to by such Holder, no Holder of any Claim or Interest junior will receive or retain any property on account of such junior Claim or Interest.

**ARTICLE V.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**Section 5.01   Substantive Consolidation**

**1.   Plan as Request for Substantive Consolidation**

The Plan shall serve as a motion seeking entry of an order substantively consolidating all of the Debtors' Estates, which request shall be approved pursuant to the Confirmation Order.  Factual and legal evidence supporting the Plan Proponents' request for substantive consolidation shall be set forth in subsequent pleadings filed in advance of the Confirmation Hearing, which may include a legal memorandum in support of Confirmation.

**2.   Effect of Substantive Consolidation**

As a result of the entry of the Confirmation Order and on the Effective Date, the Debtors' Estates shall be deemed consolidated, which shall provide that (i) all Intercompany Claims among the Debtors shall be eliminated, (ii) any obligation of a Debtor and any guarantee thereof by any other Debtor shall be deemed to be one obligation, and any such guarantee shall be eliminated, (iii) each Claim filed or to be filed against more than one Debtor shall be deemed filed only against one consolidated Debtor and shall be deemed a single Claim against and a single obligation of the

Debtors, (iv) any joint or several liability of the Debtors shall be deemed one obligation of the Debtors, and (v) all transfers, disbursements, and distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates.

## Section 5.02    Implementation Actions

The Plan shall be implemented by, among other things, the Plan Proponents and Liquidation Trustee taking the following steps:

(a) as of and after the Confirmation Date (i) assuming the Agency Agreement, (ii) funding the Lender Advance (if any); (iii) continuance of the Sales by the Liquidation Trustee and Agent; and (iv) establishing the Liquidation Trust; and

(b) as of and after the Effective Date (i) funding the Lender Contribution; (ii) vesting in and transferring to the Liquidation Trust all of the Liquidation Trust Assets; (iii) continuing the Sale Process by the Liquidation Trustee and Agent in accordance with the Plan, Agency Agreement, and Sale Order; (iv) pursuing Retained Causes of Action by the Liquidation Trustee; and (v) making Distributions to Beneficiaries of the Liquidation Trust in accordance with the Plan and Liquidation Trust Agreement.

## Section 5.03    CRO

### 1.    Retention

On the Confirmation Date or as soon thereafter as reasonably practicable, and without further approval of the Bankruptcy Court, the Liquidation Trustee shall be authorized to retain the CRO to manage the Post-Confirmation Debtors' day-to-day business and operations as necessary, subject to the oversight of the Liquidation Trustee, in accordance with the terms, conditions, and obligations set forth in the CRO Retention Order.  If retained post-Confirmation, the CRO shall be entitled to compensation and reimbursement in accordance with the CRO Retention Order.

Except as set forth herein, on the Effective Date, the CRO shall have no further duties or obligations with respect to any Assets and shall have no further duties other than to assist in winding up and dissolving the Post-Confirmation Debtors in accordance with applicable law; *provided, however*, that following the Effective Date, the Liquidation Trustee, in his or her discretion, may further retain the CRO on behalf of the Liquidation Trust, in consultation of the Oversight Committee, for such matters as the Liquidation Trustee deems necessary or appropriate. On such date of dissolution of the Post-Confirmation Debtors, except to the extent further retained by the Liquidation Trustee in accordance with this Section, the CRO shall resign as a retained professional of the Post-Confirmation Debtors.

### 2.    Limitation of Liability

The CRO and its designees, employees, professionals, and the duly designated agents or representatives thereof (in their capacity as such), shall not be liable for any act or omission taken or omitted to be taken in their respective capacities, including as a retained professional for the

Liquidation Trust, other than acts or omissions resulting from willful misconduct, gross negligence or fraud.

The Liquidation Trustee shall indemnify and hold harmless the CRO and its designees, employees, professionals, and the duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Plan; *provided, however*, that no such indemnification will be made to such persons for such actions or omissions if a court of competent jurisdiction has determined by final order that the challenged conduct occurred as a result of willful misconduct, gross negligence or fraud.

### 3. Removal

To the extent retained post-Confirmation, the CRO may be removed by the Liquidation Trustee in his or her discretion in accordance with the CRO Retention Order.

If the CRO's retention is terminated or if the CRO is unwilling or unable to serve, the Liquidation Trustee may assume the role of CRO (if not already acting in such capacity), or the Bankruptcy Court shall appoint a successor CRO to be selected by the Oversight Committee following notice and a hearing. With respect to all conduct taken while acting in such capacity, the CRO shall benefit from all insurance policies obtained by or for the benefit of the officers or employees of the Post-Confirmation Debtors or the Liquidation Trust. Such authorization and benefits shall also extend to any, each and every successor, without reservation or limitation.

## Section 5.04   Liquidation Trust

### 1. Appointment of Liquidation Trustee

Pursuant to the Confirmation Order and on the Confirmation Date, the Liquidation Trustee shall be appointed and shall (i) assume control of the Debtors' Estates and day-to-day business and operations, and (ii) be vested with the authority to take all actions as may be necessary to establish the Liquidation Trust and take title to the Liquidation Trust Assets on the Effective Date.

The Liquidation Trustee shall be entitled to compensation and reimbursement for his or her actual and necessary expenses from the Liquidation Trust both prior to and after the Effective Date incurred in connection with the performance of his or her duties as set forth in the Plan and Liquidation Trust Agreement. The Liquidation Trustee shall be entitled to retain independent counsel and other professionals (including but not limited to the CRO), in consultation with the Oversight Committee, to carry out his duties, with all associates actual and necessary expenses entitled to compensation and reimbursement from the Liquidation Trustee.

### 2. Creation of Liquidation Trust

On the Confirmation Date, or as soon thereafter as reasonably practicable, the Post-Confirmation Debtors and the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall take

all steps necessary to establish the Liquidation Trust in accordance with the Plan, which shall be for the benefit of the Beneficiaries.

The Liquidation Trust shall be established for the purpose of: (i) obtaining and taking title to the Liquidation Trust Assets, including but not limited any remaining M&E Assets, Cash, outstanding accounts receivable, and Retained Causes of Action, (ii) liquidating or otherwise disposing of the Liquidation Trust Assets, including continuing to pursue the Sales as necessary; (iii) managing any remaining Assets during the Sale Process, (iv) reconciling and objecting to Claims, as provided for in the Plan; (v) pursuing Retained Causes of Action, and (vi) making Distributions in accordance with the Plan, the Liquidation Trust Agreement, and Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.

### 3. The Oversight Committee

On the Effective Date, the Oversight Committee shall be appointed and shall be composed of five (5) Persons. The Committee shall select two (2) persons to serve on the Oversight Committee, and the Lenders shall designate three (3) persons in connection with the Lender Deficiency Claim. The Oversight Committee shall be formed to oversee the implementation and administration of the Liquidation Trust and shall operate in accordance with the terms set forth in the Liquidation Trust Agreement and Confirmation Order.

The duties and powers of the Oversight Committee shall terminate upon the later to occur of (a) entry of the final decree in the Chapter 11 Case, or (b) dissolution of the Liquidation Trust. Any reasonable and documented expense reimbursement Claims made by the Oversight Committee Members shall be evaluated and paid as set forth in the Liquidation Trust Agreement.

### 4. Vesting of Assets in the Liquidation Trust

#### (i) Effective Date Transfer

On the Effective Date, all Liquidation Trust Assets and all of the Debtors and Post-Confirmation Debtors' rights, title, and interest thereto, including but not limited to all of the M&E Assets and Retained Causes of Action, shall be deemed to be irrevocably transferred to the Liquidation Trust. In accordance with Bankruptcy Code section 1141, except as specifically provided in the Plan or the Confirmation Order, the Liquidation Trust Assets shall automatically vest in the Liquidation Trust free and clear of all Claims, liens, encumbrances, or interests, subject only to the Liquidation Trust Interests and the Liquidation Trust Expenses. The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan, Confirmation Order and the Liquidation Trust Agreement.

The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3)(B) solely with respect to the Liquidation Trust Assets.

(ii)  **Continuing Management of Assets**

To the extent any M&E Assets (and any other Liquidation Trust Assets) are being utilized, or remain subject to, existing or ongoing projects of the Debtors or Post-Confirmation Debtors during the Sale Process, the Liquidation Trustee or the CRO (to the extent retained in the discretion of the Liquidation Trustee), shall manage and oversee such M&E Assets for the purpose of completing such ongoing projects and shall maintain such M&E Assets for the benefit of the Liquidation Trust until the earlier of (i) the completion of such ongoing projects, or (ii) the Sale of such Assets.

## Section 5.05   Sources of Funding

### 1.  General

All Distributions and other expenses required to be satisfied in Cash pursuant to the Plan shall be satisfied with (i) Cash on hand as of and after the Confirmation Date and Effective Date; (ii) collections of accounts receivable, (iii) the Lender Advance (if any), (iv) revenues generated by the Debtors' post-Confirmation operations (if any), (v) Sale Proceeds, (vi) the Lender Contribution (which shall be payable only to Holders of Class 3 General Unsecured Claims in accordance with the Plan); and (vii) recoveries, if any, from the prosecution or settlement of Retained Causes of Action.

### 2.  Lender Contribution

On the Effective Date or as soon thereafter as reasonably practicable thereafter, the Lenders shall cause to be delivered to the Liquidation Trustee the Lender Contribution from Sale Proceeds as a voluntary contribution to Holders of General Unsecured Claims, which shall be distributed to Beneficiaries of the Liquidation Trust in accordance with the Plan.  For the avoidance of doubt, the Lender Contribution (i) shall not increase the Lender Claim, and (ii) shall not be used to satisfy the Lender Deficiency Claim or any Insider Claims.

## Section 5.06   Corporate Action; Officers and Directors; Effectuating Documents

### 1.  Corporate Authority

On the Confirmation Date, or as soon thereafter as reasonably practicable thereafter, all matters and actions provided for under the Plan that would otherwise require approval of the officer(s) or director(s) of the Debtors shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the board of directors of each of the Debtors.

### 2.  Post-Confirmation Board

On the Confirmation Date or as soon as reasonably practicable thereafter, the Debtors' managers or board of directors (if any) shall be replaced by the Liquidation Trustee, who shall serve as the sole manager or member of the board of each Post-Confirmation Debtor until such time as the Post-Confirmation Debtors are dissolved.

## Section 5.07   Records

The Liquidation Trustee shall retain those documents maintained by the Debtors in the ordinary course of business and which are not otherwise transferred to purchasers of any Assets pursuant to the Sale Process; *provided, however*, that the Liquidation Trustee shall not destroy any documents without the consent of the Oversight Committeee until twelve (12) months after Sale Process has concluded; and *provided further* that the Liquidation Trustee shall not destroy any documents, including but not limited to tax documents, that the Liquidation Trustee is required to retain under applicable law, or any documents related to pending litigation.

**ARTICLE VI.**

**<u>SALE PROCESS</u>**

## Section 6.01   The Sale Process

### 1.   Continuation of Sale Process

The Liquidation Trustee may, in his or her discretion, continue to retain the Agent for purposes of continuing the Sale Process as needed.  The Confirmation Order shall authorize the continued retention of the Agent as necessary in accordance with the terms set forth in the Sale Order.  To the extent retained post-Confirmation, the Agent shall be entitled to compensation and reimbursement in the ordinary course for his or her actual and necessary expenses as set forth in the Sale Order and Agency Agreement

On the Confirmation Date, or as soon thereafter as reasonably practicable, and without further approval of the Bankruptcy Court, the Liquidation Trustee shall be authorized to assume the Agency Agreement in accordance with the terms, conditions, and obligations set forth in the Sale Order.  The Liquidation Trustee shall thereafter assume all powers, responsibilities, and obligations under the Sale Order and Agency Agreement in replacement of the Debtors and CRO, as applicable.  The Agent shall continue the performance of its obligations under the Agency Agreement post-Confirmation, and shall provide Services (as defined in the Agency Agreement) to, seek approvals from, and otherwise satisfy its obligations under the Agency Agreement for the benefit of, the Liquidation Trustee.

### 2.   Agent Responsibilities

On and after the Confirmation Date and subject to the oversight and supervision of the Liquidation Trustee, the Agent shall have the power and responsibility to do all acts contemplated by the Plan, the Sale Order, and the Agency Agreement.  In all circumstances, the Agent shall act in the best interests of the Post-Confirmation Debtors and Liquidation Trust, as applicable, and subject to the supervision of the Liquidation Trustee.

The Agent shall provide the Liquidation Trustee and Oversight Committee with written and/or oral reports, not less frequently than bi-weekly, concerning, among other things, the Agent's marketing and sale activities.

**Section 6.02    Lenders as Qualified Bidders**

The Lenders shall have the right, to the fullest extent permitted under the Bankruptcy Code, to submit a credit bid at any Sale in an amount up to and including the full amount of the Lender Claim.  In such case, Lenders shall be deemed a "Qualified Bidder" and any credit bid submitted by the Lenders shall be deemed a "Qualified Bid" notwithstanding any requirements applicable to any other potential, actual, or successful bid or bidder.

In the event that the Lenders exercise their right to credit bid at any Sale as provided herein, then the amount of the Lender Claim payable as a Class 1 on such terms as described in the Plan shall be reduced on a dollar-for-dollar basis in the amount of any such successful credit bid.

**Section 6.03    Closing Conditions**

Each Sale shall be consummated on the applicable Closing Date in accordance with the Sale Order, but in no event later than ten (10) days following the date on which the respective Sale is concluded, unless otherwise agreed to by the Post-Confirmation Debtors in consultation with the Lenders and Oversight Committee.

Assets shall be sold "AS IS, WHERE IS" and "WITH ALL FAULTS" with no guarantee, representation, or warranty (including, without limitation, any representation or warranty of merchantability or fitness), express or implied, of any kind or nature, including without limitation as to: (i) the existence or nonexistence of other encumbrances including Liens, covenants, restrictions, and easements of record; (ii) any description of the Assets, (iii) the quality or condition of the Assets; and (vi) the Debtors', Post-Confirmation Debtors', or Liquidation Trustee's direct or indirect right, title, and interest in and to the Assets.  The transfer of the relevant Assets shall be made without recourse and without representation or warranty of any kind or nature whatsoever, subject to all defenses of the Agent and Liquidation Trustee, and subject to all liabilities affecting the Assets.

**Section 6.04    Sales Free and Clear**

Upon the consummation of each Sale on each respective Closing Date, the Assets shall be transferred to and vest in the applicable purchaser free and clear of all Claims, Liens, encumbrances, and interests of all kinds and of whatever nature arising prior to the occurrence of the Effective Date, including without limitation all such Claims, Liens, encumbrances, and interests attaching to the Sale Proceeds and being satisfied, compromised, settled, released, and discharged in accordance with the Plan.

Upon the consummation of each Sale on each respective Closing Date, if any Person has filed financing statements, mortgages, mechanic's liens, or other documents or agreements evidencing Claims or Liens against the Assets, and has not delivered to the Liquidation Trustee prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all such Claims or Liens, then the Liquidation Trustee may execute and file such statements, instruments, releases and other documents on behalf of such Person.

**Section 6.05    Assumption Procedures**

**1.    Assumption and Assignment**

Except as otherwise provided in the Plan or otherwise agreed by any contract counterparty, (a) any Executory Contract or Unexpired Lease designated for assumption and assignment in the Assumption Notice shall, in the Liquidation Trustee's discretion in consultation with the Oversight Committee, be assumed by the Post-Confirmation Debtors and, if necessary, deemed assigned to the applicable purchaser of such Assets pursuant to sections 365 and 1123 of the Bankruptcy Code, and (b) all other Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code.

The Plan Proponents, in consultation with the CRO and Agent, may amend the Assumption Notice at any time prior to Confirmation; *provided, however*, that any counterparties to Executory Contracts or Unexpired Leases added to the Assumption Notice shall have seven (7) days from the date thereof to file an objection to the proposed assumption and assignment of such Executory Contracts or Unexpired Lease or any proposed Cure Claim set forth therein.

**2.    Assumption Notice**

No later than fourteen (14) days prior to the Confirmation Hearing, the Plan Proponents shall file the Assumption Notice.  The deadline to file any objections in connection with the Assumption Notice, including but not limited to any objections to any Cure Claims set forth therein, shall be no later than seven (7) days prior to the Confirmation Hearing.

Any unresolved disputes relating to the assumption of any Executory Contract or Unexpired Lease shall be resolved by the Bankruptcy Court at the Confirmation Hearing.  If the Confirmation Order is entered and a dispute remains regarding any Executory Contract or Unexpired Lease, then Cash equal to the amount of such dispute shall be reserved by the Liquidation Trustee on the Effective Date.

**3.    Cure Payments**

To the extent designated for assumption and assignment as part of any Sale, on the earlier of the Closing of any Sale or the Effective Date, or as soon thereafter as reasonably practicable thereafter, the Liquidation Trustee or purchaser of the applicable Asset, as agreed between the parties, shall satisfy all Cure Claims and other undisputed defaults under any Executory Contract or Unexpired Lease that is assumed and assigned in accordance with the Plan.

If (i) at the time the Confirmation Order is entered there is a dispute regarding the appropriate cure amount for any Executory Contract or Unexpired Lease and (ii) the applicable purchaser is not required to satisfy such Cure Claim, then Cash equal to the amount of such Cure Claims in dispute shall be held in a Cure Claim Reserve for the benefit of the applicable counterparties.  If any such Cure Claim becomes an Allowed Claim by agreement of the parties or by Final Order, then the applicable portion of the Cash held in reserve therefor shall be paid to the applicable counterparty by the later of (i) seven Business Days after the entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto and (ii) the Effective Date.

### 4.  Rejection Damages Claims & Bar Date

Any Allowed Claim arising from the rejection of any Executory Contract or Unexpired Lease shall be deemed a Class 3 General Unsecured Claim.  Any Allowed Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be filed no later than **thirty (30) days** after the later of: (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides otherwise), and (ii) the Effective Date.

Any Allowed Rejection Damages Claim not timely filed and served in accordance with this Section shall be released, discharged and forever barred from assertion against the Debtors, their Estates or property, the Post-Confirmation Debtors, and the Liquidation Trust.  For the avoidance of doubt, any Rejection Damages Claims held by Insiders shall not receive any Distribution from the Lender Contribution.

### 5.  W4 Leases

Notwithstanding subsections (1)-(4) herein, pursuant to the Settlement and Agreed Order, W4 has agreed to lease the W4 Properties to the Debtors (and thereafter the Post-Confirmation Debtors and the Liquidation Trust) for a period of twelve (12) months following the entry of the Agreed Order (the "W4 Lease Term").  As of the Confirmation Date and pursuant to the Confirmation Order, the W4 Leases shall be deemed rejected; *provided*, that (i) the Post-Confirmation Debtors and Liquidation Trust shall be permitted to continue to use and occupy the W4 Properties during the W4 Lease Term in accordance with the Settlement, and (ii) the W4 Leases may be extended beyond the W4 Lease Term on a month-to-month basis by mutual agreement of W4 and the Post-Confirmation Debtors or Liquidation Trustee, as applicable.

## Section 6.06   Tax Exemptions

To the maximum extent permitted under section 1146(a) of the Bankruptcy Code, each Sale of the Assets (and any other transfers of property in furtherance of the Plan) shall be deemed to be pursuant to the Plan, and the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with the Plan or each Sale shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other Governmental Unit, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to or in connection with such transfers of property without the payment of any such tax or governmental assessment.

**ARTICLE VII.**

**LIQUIDATION TRUST**

## Section 7.01   Liquidation Trust Agreement

The Liquidation Trust Agreement will provide for, among other things: (i) the payment of Liquidation Trust Expenses; (ii) the payment of other reasonable expenses of the Liquidation Trust and Liquidation Trustee; (iii) the retention of counsel, accountants, financial advisors, or other

professionals and the payment of their reasonable compensation; (iv) the orderly liquidation of the Liquidation Trust Assets, including overseeing the Sale Process in conjunction with the Agent; (v) pursuit of Retained Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Retained Causes of Action; (vi) the prosecution and resolution of objections to Claims; and (vii) the establishment of such reserves as the Liquidation Trustee deems appropriate.

The Liquidation Trust Agreement shall provide that the Liquidation Trustee shall be indemnified by and receive reimbursement from the Liquidation Trust Assets against and from any and all loss, liability, expense (including reasonable attorneys' fees), or damage which the Liquidation Trustee incurs or sustains, in good faith and without either willful misconduct, gross negligence or fraud, acting as Liquidation Trustee under or in connection with the Liquidation Trust Agreement.

**Section 7.02    Liquidation Trustee**

    **1.  Powers and Duties**

The terms of the Liquidation Trustee's employment, including the Liquidation Trustee's duties and obligations, shall be set forth in the Liquidation Trust Agreement.  On and after the Confirmation Date, the Liquidation Trustee shall have the power and responsibility to do all acts contemplated by the Plan to be done by the Liquidation Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidation Trust Assets and the distribution of the proceeds thereof.  Except as set forth in the Plan, Confirmation Order, and Liquidation Trust Agreement, the Liquidation Trustee may take any such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.  In all circumstances, the Liquidation Trustee shall act in its reasonable discretion in the best interests of the Beneficiaries pursuant to the terms of the Plan and the Liquidation Trust Agreement.  The Liquidation Trustee shall oversee and direct the Agent and CRO (to the extent such parties are retained post-Confirmation in the Liquidation Trustee's discretion and with consultation of the Oversight Committee) in all respects concerning the Liquidation Trust and Liquidation Trust Assets.

The Liquidation Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided, however*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings or other controlling authorities.

The Liquidation Trustee shall timely file all required post-Confirmation quarterly reports with the United States Trustee and the Bankruptcy Court, and timely pay all post-Confirmation U.S. Trustee Fees in accordance with the Plan and Confirmation Order.

    **2.  Compensation**

The Liquidation Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases as set forth in the Liquidation Trust Agreement. The Liquidation Trustee shall also be reimbursed for all documented, actual, reasonable, and necessary out-of-pocket expenses incurred in the performance of his or her duties under the Liquidation Trust Agreement.  The Liquidation Trustee shall be compensated from Cash

on hand as of the Effective Date, the Liquidation Trust Funding, and proceeds of Retained Causes of Action.

### 3. Distributions

Following the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Liquidation Trustee shall make continuing efforts to liquidate all Liquidation Trust Assets in accordance with the Plan, the Sale Order, and the Liquidation Trust Agreement; *provided, however*, that the timing of all Distributions made by the Liquidation Trustee to Beneficiaries shall be in accordance with the Liquidation Trust Agreement.

### 4. Dissolution of Liquidation Trust

The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as:

(a) (i) all Disputed Claims have been resolved; (ii) all of the Liquidation Trust Assets have been liquidated; (iii) all duties and obligations of the Liquidation Trustee under the Liquidation Trust Agreement have been fulfilled; (iv) all Distributions required under the Plan and the Liquidation Trust Agreement have been made; and (v) the Chapter 11 Cases have been closed; or

(b) otherwise provided in the Liquidation Trust Agreement; *provided that*, the Liquidation Trust shall be dissolved within a reasonable time based on all facts and circumstances, and, in any event, shall be dissolved no later than five (5) years from the Effective Date. If warranted by the facts and circumstances, and subject to consultation with the Oversight Committee and approval of the Bankruptcy Court, that an extension is necessary to the liquidating purpose of the Liquidation Trust, the term of the Liquidation Trust may be extended.  Any such extension must be approved by the Bankruptcy Court within six (6) months of the Liquidation Trustee's request for an extended term.

If at any time the Liquidation Trustee determines, in reliance upon such professionals as the Liquidation Trustee may retain and in consultation with the Oversight Committee, (i) that the expense of administering a Liquidation Trust so as to make a final distribution to Liquidation Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidation Trust, (ii) all Allowed Claims (other than those whose distributions are deemed undeliverable under the Plan) have been paid in full, or (iii) the amount of any final distributions to Holders of Allowed Claims would be $100.00 or less and the aggregate amount of Cash available for distributions to Holders of Allowed General Unsecured Claims is less than $5,000.00, then the Liquidation Trustee may sell any remaining Liquidation Trust Assets and/or transfer any remaining Liquidation Trust Assets to a charitable organization(s) without further order of the Bankruptcy Court.

## Section 7.03   Causes of Action

Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into or effected in connection with or pursuant to the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Post-Confirmation Debtors shall receive and retain all Retained Causes of Action.

On the Effective Date, Liquidation Trust shall receive and retain all rights to commence and pursue any and all any and all Retained Causes of Action that were property of the Debtors, the Post-Confirmation Debtors, or their Estates as of the Confirmation Date, to be pursued for the benefit of Beneficiaries in accordance with the Plan and Liquidation Trust Agreement. The Liquidation Trustee may pursue, settle, abandon, or otherwise administer such Retained Causes of Action in accordance with the terms of the Liquidation Trust Agreement. Distributions of proceeds from Retained Causes of Action as between the Lenders (on account of the Lender Claim and the Lender Deficiency Claim) and all other Holders of General Unsecured Claims (excluding Insiders) shall be in accordance with the Causes of Action Allocation. For the avoidance of doubt, upon the Effective Date, the Liquidation Trust may substitute into any adversary proceedings or other litigation matters where the Debtors, Post-Confirmation Debtors, or Committee are a party.

## ARTICLE VIII.

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

### Section 8.01   Conditions to Confirmation

Confirmation shall not occur unless and until each of the following have been satisfied or waived in accordance with the provisions set forth herein:

    I.    One or more Plan Supplements are filed containing the (A) identity, qualifications, and proposed compensation of the Liquidation Trustee, (B) Liquidation Trust Agreement, and (C) Retained Causes of Action;

    II.    The Plan Proponents have filed a proposed Confirmation Order; and

    III.    The Plan shall not have been materially amended, altered, or modified unless such material amendment, alteration or modification has been made with consent of the Plan Proponents in accordance with the provisions set forth herein.

Confirmation shall not occur until all conditions set forth herein have been satisfied or otherwise waived in writing by the Plan Proponents. The Plan Proponents shall take all necessary steps, and perform all necessary actions, to consummate the terms and conditions set forth in the Plan.

### Section 8.02   Effect of Confirmation

#### 1.  Vesting of Assets

Upon Confirmation, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets of the Debtors shall vest in the Post-Confirmation Debtors in accordance with the terms of the Plan and shall be managed by the Liquidation Trustee.

Following Confirmation, the Post-Confirmation Debtors may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.

### 2. Sale Process

The Confirmation Order shall authorize the Post-Confirmation Debtors and Liquidation Trustee to continue conducting the Sales in accordance with the Sale Order and the continued retention of the Agent thereunder. The Agent shall be authorized to continue the Sale Process as of the Confirmation Date. All proceeds of the Sales generated prior to the Effective Date shall be distributed in accordance with the Sale Order or held by the Post-Confirmation Debtors for the benefit of the Liquidation Trust and shall be transferred to the Liquidation Trust on the Effective Date as Liquidation Trust Assets.

### 3. Liquidation Trust

Following Confirmation and before the Effective Date, the Debtors, Post-Confirmation Debtors, and Liquidation Trustee shall take all necessary steps to establish the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement. The Liquidation Trust shall be established for the purposes described in this Plan and any other purposes more fully described in the Liquidation Trust Agreement, and shall be subject to the jurisdiction of the Bankruptcy Court.

### Section 8.03   Conditions to Effective Date

The Effective Date shall not occur and the Plan shall not become effective unless and until each of the following conditions have been satisfied or otherwise waived as provided herein:

    I.    The Liquidation Trust shall have been established and all actions or documents necessary to establish the Liquidation Trust shall have been executed;

    II.    The Confirmation Order shall have become Final Order;

    III.    The Agency Agreement shall have been assumed pursuant to the Confirmation Order; and

    IV.    No stay of the Confirmation Order shall then be in effect.

The Effective Date shall not occur unless or until all conditions set forth herein have been satisfied or otherwise waived by in writing by the Plan Proponents. The Plan Proponents, together with the Post-Confirmation Debtors and other parties as necessary, shall take all necessary steps, and perform all necessary actions, to consummate the terms and conditions set forth in the Plan.

### Section 8.04   Effective Date Notice

On the Effective Date,  or as soon thereafter as reasonably practicable, the Liquidation Trustee shall cause to be filed the Effective Date Notice, which shall provide notice of, among other things, (i) the continuance of the Sale Process (if any); and (ii) all relevant Bar Dates, and (iii) any other information as required by the Confirmation Order.

**Section 8.05    Vesting of Liquidation Trust Assets**

The corpus of the Liquidation Trust shall consist of the Liquidation Trust Assets.  On the Effective Date, pursuant to the Plan and in accordance with the Liquidation Trust Agreement, the Liquidation Trust Assets shall be irrevocably transferred to and vest in the Liquidation Trust; *provided that*, to the extent certain Assets comprising the Liquidation Trust Assets are not known or identified as of the Effective Date, such Assets shall automatically, and without further act, deed, or order from the Bankruptcy Court, be transferred to and vest in the Liquidation Trust upon the discovery or identification thereof.  From and after the Effective Date, the Liquidation Trust Assets, including without limitation, M&E Assets, Sale Proceeds, Retained Causes of Action, and all Assets related thereto, shall be transferred to the Liquidation Trust to be administered in accordance with the Plan and the Liquidation Trust Agreement.

**Section 8.06    Waiver of Conditions**

The Plan Proponents may, in their discretion, at any time, and without notice or authorization of the Bankruptcy Court, waive the conditions to Confirmation or the Effective Date by a writing signed by an authorized representative of each of the Committee and the Lenders (including respective counsel).  The Plan Proponents reserve all rights to assert that any appeal of the Confirmation Order shall be moot following consummation of the Plan.

**Section 8.07    Effect of Nonoccurrence of Conditions**

If the conditions precedent to the Effective Date are not satisfied or waived, the Plan Proponents may, upon motion and notice to parties in interest, seek to vacate the Confirmation Order and thereafter seek relief from the automatic stay.

If the Confirmation Order is vacated: (a) the Plan shall be deemed null and void in all respects; and (b) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtors, or (ii) prejudice, in any manner, the rights of the Debtors, the Committee, or any other Person or Entity.

## ARTICLE IX.

## PROVISIONS GOVERNING DISTRIBUTIONS

**Section 9.01    Distributions**

Following the Effective Date, the Liquidation Trustee shall make all Distributions or other payments (including but not limited to the Lender Contribution) under the Plan and may utilize the assistance of any outside parties and professionals to make such Distributions or payments under the Plan to the extent necessary or desirable to do so.  The Liquidation Trustee shall be exculpated from any liability as set forth herein for any errors or omissions made with respect to Distributions or payments under the Plan, except for any liability resulting from gross negligence or willful misconduct.

**Section 9.02    Objections to Claims**

The Liquidation Trustee shall have the right to object to and otherwise contest any Claims, as directed or with the consent of the Lenders, other than with respect to the Class 1 Claim.

The Liquidation Trustee shall have the right, following Confirmation of the Plan and until one hundred twenty (120) days following the Effective Date, to assert such objections, or during such additional period as requested by the Liquidation Trustee and authorized by order of the Bankruptcy Court.  Any Claim for which no objection has been filed within the time fixed herein (including any extensions of objection deadlines) shall be deemed an Allowed Claim in such amount as is set forth in a Proof of Claim timely filed with the Bankruptcy Court, or if no proof of Claim was filed, as listed in the Schedules and not identified as disputed, contingent or unliquidated.  The Liquidation Trustee, in consultation with the Plan Proponents, and the Holder of any Claim may enter into a written settlement agreement to compromise any Claim, which agreement shall become effective pursuant to the terms of the Plan or upon entry of a Final Order approving the terms thereof, as applicable.

**Section 9.03    No Distribution Pending Allowance**

Notwithstanding anything to the contrary herein, no payment or Distribution of any kind shall be made with respect to any portion of a Claim that is a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

**Section 9.04    Undeliverable Distributions**

If a Distribution to a Holder of a Claim or Interest is returned to the Liquidation Trustee as undeliverable, the Liquidation Trustee shall make reasonable efforts to contact such Claimant or Interest Holder and obtain a then-current address.  If no current address can be located after such additional efforts, no further distribution shall be made to such Claimant or Interest Holder unless and until the Liquidation Trustee is notified in writing of such Claimant or Interest Holder's current address within 30 days after such initial Distribution had been returned as undeliverable. Undeliverable and unclaimed Distributions shall remain in the possession of the Liquidation Trustee shall revert to the Lenders (with respect to Distributions of the Lender Advance or Lender Contribution) or to the Liquidation Trust (with respect to all other Distributions) after such 30-day period.

**Section 9.05    Minimum Distributions**

Notwithstanding anything herein to the contrary, the Liquidation Trust shall not be required to make Distributions or payments of less than $50.00.

## ARTICLE X.

## EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

### Section 10.01  Exculpation

Except as otherwise provided by the Plan or the Confirmation Order, on the Effective Date to the extent permitted by applicable law, the Exculpated Parties shall be deemed exculpated and released, to the greatest extent permitted under applicable law, by all Holders of Claims or Interests, of and from any claims, obligations, rights, Causes of Action and liabilities for any act or omission in connection with, or arising out of, the Case, including, without limiting the generality of the foregoing, all retentions, motions and applications, sales of assets, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; *provided, however*, that no such Exculpated Parties shall be discharged from obligations under the Plan or of any claim or cause of action arising from or related to acts or omissions which constitute willful misconduct, gross negligence, fraud or criminal conduct under the laws of the United States or any state or local authority.

### Section 10.02  Injunction

Except as otherwise provided in the Plan, on and after the Effective Date, all Persons who have held, hold or may hold or assert Claims or Liens against the Debtors or their property arising prior to the Effective Date, or Interests in the Debtors, are, with respect to any such Claims, Liens, or Interests, permanently enjoined from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidation Trustee, any of their property including without limitation the Assets, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against the Debtors, the Liquidation Trustee, any of their property, including without limitation the Assets, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien or encumbrance of any kind against the Debtors, the Liquidation Trustee, any of their property, including without limitation the Assets, or against any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Debtors or the Liquidation Trustee; (d) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan.  Nothing contained in this Section shall affect the rights of a Holder of an Allowed Claim or Interest to receive and enforce Distributions on account of its Allowed Claim or Interest in accordance with the Plan or to enforce the provisions of the Plan, or shall effect the release or discharge of any Designated Lien.

Any claim or action asserted against the Liquidation Trustee or his professionals or contractors, to the extent not enjoined by the foregoing provision, must be brought in the Bankruptcy Court, and no other court shall have jurisdiction to hear any such claim or action.

### Section 10.03  Binding Effect

On the Effective Date, or as soon thereafter as reasonably practicable, the terms of the Plan shall be immediately effective and enforceable and shall bind all Holders of Claims against or Interests in the Debtors, whether or not such Holders accept the Plan.

**ARTICLE XI.**

**<u>MISCELLANEOUS</u>**

### Section 11.01  Pre-Confirmation Modification

The Plan Proponents may amended or modify the Plan before the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

### Section 11.02  Withdrawal

The Plan Proponents reserve the right in their sole and absolute discretion to revoke or withdraw the Plan at any time prior to the the Effective Date.  If the Plan Proponents revoke or withdraw the Plan, then the Plan shall be null and void in all respects, and if so revoked or withdrawn subsequent to the Confirmation Date, the result shall be the same as if the Confirmation Order had not been entered.

### Section 11.03  Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Persons.

### Section 11.04  Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Kentucky.

### Section 11.05  Notices

Any notice required or permitted to be provided under the Plan shall be in writing and served by either certified mail, return receipt requested (postage and charges prepaid), hand delivery, reputable national overnight courier service (all charges prepaid), or email transmission, to the following addresses.  Notices given by certified mail, hand delivery, or reputable national overnight courier service shall be deemed received when actually received by the recipient. Notices given by email transmission shall be deemed received upon the sender's receipt of an

acknowledgement from the intended recipient (by the "return receipt requested" function, return email, or other written acknowledgment).

(1) Counsel for the Lenders:

Fowler Bell PLLC
300 West Vine Street
Lexington, KY 40507
Telephone:  (859) 252-6700
Facsimile:   (859) 255-3735
Taft A. McKinstry
Email: tmckinstry@fowlerlaw.com

*-and-*

Thompson Coburn LLP
488 Madison Avenue
New York, New York 10022
(212) 478-7200 (t)
(212) 478-7400 (f)
Mark S. Indelicato, Esq.
Jacob T. Schwartz, Esq.

-and-

(2) Counsel for The Official Committee of Unsecured Creditors of Sterett Companies, LLC, *et al.*:

Dentons Bingham Greenebaum LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
502-587-3644
james.irving@dentons.com
april.wimberg@dentons.com

**Section 11.06        Retention of Bankruptcy Court Jurisdiction**

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Case, including but not limited to all matters arising under or in connection with the Plan, the Sales, and the Sale Process, and including without limitation jurisdiction to:

I.    Determine all proceedings, and enter and implement such orders as are necessary or appropriate, in connection with the Sales, including but not limited to enforcement

of the Sale Order and the transfer of the M&E Assets to the Liquidation Trust and to third-party purchasers;

II.  Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

III.  Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for payment of Professional Fees authorized pursuant to the Bankruptcy Code or the Plan;

IV.  Resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract is or was executory or expired;

V.  Ensure that Distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to Distributions under the Plan;

VI.  Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

VII.  Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (1) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order and (2) the Plan, the Confirmation Order, the Sale Process, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan and the Sale Process;

VIII.  To enforce the Confirmation Order, including to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan;

IX.  Hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Case or the Plan;

X.  Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

XI.   Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

XII.   Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

XIII.   Enter an order or Final Decree concluding or closing the Bankruptcy Case;

XIV.   Enforce all orders previously entered by the Bankruptcy Court; and

XV.   Hear any other matter not inconsistent with the Bankruptcy Code.

**Section 11.07        Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other person or entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

*[ Remainder of Page Intentionally Left Blank ]*